UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

PHYLLIS SALAZAR, Individually, and )
as the surviving spouse of )
Craig J. McKinnis )
 )
                Plaintiff, )     Case No.:
 )
v. )     JURY TRIAL DEMANDED
 )
UNIFED GOVERNMENT OF )
WYANDOTT COUNTY, KANSAS CITY )
KANSAS, KANSAS CITY, KANSAS )
POLICE DEPARTMENT, AND KANSAS )
CITY POLICE OFFICERS )
JERMEY SHEPARD, ANDREW )
WILCOX. ABIGAIL FITHIAN, LUCAS )
GRAVES, KENNETH HICKERSON, )
WALTER JONES, KATHLEEN HILL, )
SCOTT LADISH, )
STEVEN SHELDON, JOHN DOE )
DET. HOWARD, AND JOHN DOE )
DET. WARCZAKOSKI in both their )
Individual and official capacities. )
 )
                Defendants. )

## COMPLAINT

COMES NOW Plaintiff, Phyllis Salazar, individually and as the surviving

spouse of Craig J. McKinnis, and states the following causes of action:

## PARTIES

1.    Plaintiff, Phyllis Salazar is a resident of Wyandotte County, Kansas.

Plaintiff is the surviving spouse of Craig J. McKinnis through common law

marriage.

2.    Defendant Unified Government of Wyandotte County and Kansas

City, Kansas (hereinafter "Unified Government"), was created by and established under the laws of the State of Kansas.  The Unified government is in charge of and implements the polices, procedures, rules, regulations and guidelines of the Kansas City Kansas Police Department.  It is authorized to sue and be sued in its own name.

3.      Defendant Kansas City Kansas Police Department is an agency of the Unified Government (hereinafter "KCKPD").

4.      Defendants Jeremy Shepard, Andrew Wilcox, Abigail Fithian, Lucas Graves, Kenneth Hickerson, Walter Jones, Kathleen Hill, Scott Ladish and Steve Sheldon, John Doe Det. Warczakoski badge #1617 and John Doe Det. Howard badge #1561 are, and were, at all times relevant to this Complaint, police officers in the Kansas City, Kansas Police Department (hereinafter collectively defendant "Officers").  Each is being sued in her/his individual and official capacity.

5.      Defendant Terry Ziegler (hereinafter defendant "Ziegler") is the Chief of Police for the Unified Government, and as such, is responsible for the policies, practices, and customs of the KCKPD.  As the Chief of Police for the KCKPD, defendant Ziegler has supervisory and training responsibilities for the defendant Officers.

**VENUE AND JURISDICTION**

6.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343 inasmuch as Plaintiff presents federal claims arising under the Eighth and Fourteenth Amendments of the United States Constitution and 42

U.S.C. §§ 1983 and 1988.  Further, this Court has jurisdiction under 28 U.S.C. § 1367 to hear Plaintiff's state law wrongful death claims in that all claims made herein are so related to each other that they form part of the same case or controversy under Article III of the United States Constitution.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in, and, at the time of this action was commenced, at least one of the Defendants was subject to personal jurisdiction in, Kansas City, Wyandotte County, Kansas, which lies within the District of Kansas.

### FACTS COMMON TO ALL COUNTS

8.      Plaintiff is the common law surviving spouse of the decedent Craig J. McKinnis (hereinafter "Husband").

9.      On May 22, 2014, Plaintiff and her Husband were lawfully driving down the road,

10.      Upon information and belief, at approximately 6:00 pm, Plaintiff and her Husband were stopped by Officers Shepard and Wilcox at the 500 block of Stewart Ave. in Kansas City, Wyandotte County, Kansas.

11.      Two officers approached Plaintiff's car.  One officer asked Plaintiff for her identification, while the other officer asked by her Husband's identification.

12.      Both officers then briefly retreated from the sides of Plaintiff's vehicle.

13.      The officers shortly returned to the vehicle, both of them on the

passenger side where her Husband was seated.

14.     The officers asked her Husband to exit Plaintiff's car.

15.     Shortly after Plaintiff's Husband exited the car, he was then tackled by the police officers.

16.     Plaintiff exited her car a witnessed officers subduing her Husband.

17.     About the time Plaintiff's Husband was tackled, additional officers began to arrive at the scene. Upon information and belief, officers Fithian arrived at the scene and assisted officers Shepard and Wilcox in arresting her Husband.

18.     Upon information and belief, officer Hickerson arrived on the scene, and assisted Shepard, Wilcox and Fithian in arresting Plaintiff's Husband.

19.     Upon information and belief, officer Jones arrived on the scene and assisted officers Shepard, Wilcox, Fithian and Hickerson in arresting Plaintiff's Husband.

20.     Upon information and belief, officer Graves arrived on the scene. Officer Graves assisted officers Shepard, Wilcox, Fithian, Hickerson and Jones in arresting Plaintiff's Husband.

21.     Upon information and belief, officer Hill arrived at the scene, where he observed officers Shepard, Wilcox, Fithian, Hickerson and Graves arresting Plaintiff's Husband.

22.     Upon information and belief, officer Hill heard Plaintiff's Husband exclaiming repeatedly that he could not breath during the arrest, but did nothing to address the cries of Plaintiff's Husband.

23.     Upon information and belief, officer Ladish arrived at the scene at witnessed the arrest of Plaintiff's Husband by officers Shepard, Wilcox, Fithian, Hickerson and Jones.

24.     Upon information and belief, officer Ladish heard Plaintiff's Husband exclaiming repeatedly that he could not breath during the arrest, but did nothing to address the cries of Plaintiff's Husband.

25.     Upon information and belief, officer Sheldon arrived at the scene at witnessed the arrest of Plaintiff's Husband by officers Shepard, Wilcox, Fithian, Hickerson and Jones.

26.     Upon information and belief, officer Sheldon heard Plaintiff's Husband exclaiming repeatedly that he could not breath during the arrest, but did nothing to address the cries of Plaintiff's Husband.

27.     Upon information and belief, none of the officers on the scene did anything to address the pleas of Plaintiff's husband that he could not breath.

28.     Upon information and belief, Plaintiff's Husband was restrained by the officers face down, handcuffed behind his back and in a prone position on the street, with officers holding down his lower body and two officers holding his upper body, while Plaintiff's husband cried "I can't breath".

29.     Defendant police officers Shepard, Wilcox, Fithian, Hickerson, Graves, Hill, Ladish, and Sheldon ("Arresting Officers") did nothing to release the pressure being applied to Plaintiff's Husband's body, which prevented him from breathing, and thereafter, the officers failed to obtain and/or provide appropriate,

timely and immediate medical attention and/or assistance for Plaintiff's Husband, all of which caused and/or resulted in Plaintiff's Husband's death.

30.     During this time, Plaintiff was ordered to officers at the scene to sit on the sidewalk next to her car.   Plaintiff responded to the demands of the officers and sat down.

31.     Plaintiff could hear her Husband tell the officers that were holding him that he could not breath.  Plaintiff recalls the one of the officers saying in response to her Husband's complaints, "if you can talk, you can breath!".

32.     Plaintiff recalls her Husband telling the officers that he could not breath on numerous occasions while the police officers were on top of her Husband.

33.     During the process of the police officers killing her Husband, Plaintiff overheard one of the officers telling another officer to "get her out of her before the press gets here!"  An officer immediately thereafter escorted Plaintiff to a police car at the end of the block and to be placed into the back seat of the police car.

34.     Plaintiff asked the officer placing her in the police car if she was under arrest. The officer responded no.

35.     Prior to being seated in the back seat of the police car, Plaintiff asked the officer if she was then free to go.  The officer responded no and placed her in the police car.

36.     Plaintiff could no longer see or hear her Husband while in the police

car.

37.     After what seemed to be 20-30 minutes an officer came back to the police car to tell Plaintiff that they were taking her to the police station for questioning.

38.     Upon arrival at the police station, Plaintiff again asked the officer if she was under arrest.  The officer said no.

39.     Plaintiff again asked the officer if she was free to leave.  The officer said no and led her to a room for questioning.

40.     Plaintiff asked any police officer that she could speak with how her Husband was doing and where he could be found.   At not time during her questioning did the officers inform her of the death of her Husband or where he had been taken from the scene of the incident.

41.     During the questioning, Plaintiff was deprived of her liberty to leave the room or answer her cell phone, which was ringing from calls from the family of her Husband, including his mother.

42.     Plaintiff demanded to speak with her cousin that is an officer with the KCKPD to find out what happened to her Husband and to get her released from the police.   Upon speaking to her cousin, Plaintiff was informed of the passing of her Husband.

43.     Only then was Plaintiff allowed to leave the police station.

44.     The police officers of the KCKPD deprived Plaintiff of her civil rights by detaining her against her will.

45.     Any minimally competent, reasonable, trained police officer understands that holding a person face-down and applying pressure to his arms, legs, or torso can result in positional (or restraint) asphyxia, in which a person's ability to move his chest, abdomen, and diaphragm are restricted causing a person injury and death by asphyxia.

46.     Any minimally competent, reasonable and trained police officer knows the risks of asphyxia is particularly acute for person's the size and build of Plaintiff's Husband (244 pounds with a protruding abdomen).

47.     Accepted police practices prohibit the practice of facedown restraint because of the well-known danger and high risk of this method of restraint.

48.     Plaintiff's Husband's death was caused by compression of the chest and the prone positioning of Plaintiff's Husband during the physical restraint by the police causing him to be unable to breath.

49.     Defendant KCKPD officers negligently, recklessly and with excessive force battered and choked Plaintiff's Husband by striking him about his face, wrestling him to the ground and placing pressure on his body causing him to be unable to breath and causing his death by asphyxiation.

50.     The death of Plaintiff's Husband was as a direct result of the negligence, recklessness, carefulness and use of excessive force of the KCKPD, their agents, servants, and/or employees.

51.     The Arresting Officers did not use the appropriate level of force given the circumstances described above, and the use of excessive force was

not necessary or reasonable under those circumstances.

52.     Defendants Unified Government and KCKPD failed to properly train the Arresting Officers on the appropriate use of force in arresting Plaintiff's Husband.

53.     Defendants Unified Government and KCKPD are responsible for implementing the policies, procedures, practices and customs that condone the use of excessive force when it is not necessary or reasonable and permitted under the law in violation of citizen's rights.

54.     The use of excessive force against Plaintiff's Husband, Craig J. McKinnis, was a result of the policy(s), practices, and customs implemented and condoned by Defendants Unified Government and KCKPD in that they failed to adequately train, supervise, and discipline officers in the sue of excessive force.

55.     The inadequate supervision, training and discipline of police officers by Defendants Unified Government and KCKPD has led to the unnecessary and illegal use of excessive force against citizens, including Plaintiff's Husband, by KCKPD officers in violation of the citizen's constitutional rights.

56.     Plaintiff has suffered substantial harm as a result of the actions of the officer of the KCKPD.

57.     The officers did not use the appropriate level of force given the circumstances and deadly force was not necessary or reasonable under the circumstances.

58.     Defendant Armstrong and the Unified Government failed to property

train the defendant officers on the appropriate use of force, the use of deadly force, and officer safety positions as the defendant officers were allowed to work in the field as patrol officers without having sufficient training as to when the use of force and deadly force is necessary and permissible under the law.

59.     Upon information and belief, the above polices, procedures and customs implemented, condoned and ratified by the defendants has resulted in a culture of violence in which the use of excessive force is an accepted and customary part of the police work in the KCK Police Department where officers using excessive force are not disciplined or criminally prosecuted for the use of excessive and deadly force.

60.     The actions of the defendants were willful, wanton, reckless, malicious, outrageous, and further, show a compete and deliberate indifference to, and conscious disregard for the rights of plaintiff.

61.     Upon information and belief, Decedent, Craig McKinnis, was killed as a result of suffocation from chocking by the defendant officers, and Mr. McKinnis has sustained the following damages:

   a) Pain, suffering, fear, anxiety, emotional distress, and anguish prior to his death;

   b) Physical pain and suffering from being chocked to death;

   c) The loss of income, filial care, attention, services guidance, advice and companion ship to his wife (Plaintiff); and

   d) The loss of his life.

62.    Plaintiff's civil rights were violated by her witnessing of the killing of her Husband at the hands of the defendants, plaintiff has sustained the following damages:

   a) Pain, suffering, fear, anxiety, emotional distress from witnessing the death of her Husband;

   b) Pain, suffering, fear, anxiety, emotional distress from being held against her will by defendants.

## COUNT I
### (42 U.S.C. § 1983)

 COMES NOW Plaintiff and for Count I of her Complaint against Defendants, jointly and severally, states:

63.    Plaintiff repleads, realleges, and incorporates by reference all the allegations contained in paragraphs 1 through 62.

64.    Plaintiff brings Count I of this cause of action against Defendants pursuant to 42 U.S.C. § 1983 for damages for Defendants' deprivation of Decedent's constitutionally protected liberty rights by reason of Defendants' violation of Decedent's substantive and due process rights pursuant to the Fourth and Fourteenth Amendments of the Constitution of the United States of America.

65.    The Fourth Amendment prohibits officers from the use of excessive force.

66.    The Fourth Amendment provides that citizens of the United States are to be free from unreasonable search and seizures of their person.

67.    Defendants knew or should have know that the Fourth Amendment

prohibits the use of excessive force.

68.     Defendants failed to act under the color of state law at relevant times herein.

69.     Defendant officers used excessive force in apprehending Craig McKinnis.

70.     The degree of force used by the defendant officers was excessive because it was not reasonably necessary to arrest Craig McKinnis or take him into custody.

71.     The defendant officers knew or should have know that the alleged excessive force set forth above violated the constitutional rights of Craig J. McKinnis to be free from unreasonable seizure and excessive force.

72.     No reasonable officer in the position of the defendant officers would have used deadly force in arresting Craig J. McKinnis.

73.     Had the defendant officers taken proper restraining actions, the death of Craig McKinnis would not have occurred.

74.     The acts of the defendant officers were wanton, malicious, evil, oppressive, or involved reckless indifference to the federally protected rights of decent, Craig McKinnis, thus entitling plaintiff to an award of punitive damages against the defendant officers.

75.     The conduct of the defendants has caused plaintiff damages including but not limited to:

a)  Pain, suffering, fear, anxiety, emotional distress prior to the death of Mr.

McKinnis;

b) Physical pain and suffering from the chocking prior to the death of Mr. McKinnis;

c) The loss of income, filial care, attention, services, guidance, advice care and companionship, and

d) The loss of life.

76.     Plaintiff is entitled to recover from defendants reasonable attorney fees and expenses provided by 42 U.S.C. §1988.

WHEREFORE, plaintiff requests that the Court, after a trial by jury of the claims, enter judgment against defendants, for her actual damages or nominal damages, for punitive or exemplary damages, for attorneys fees and expenses pursuant to 42 U.S.C. § 1988, her costs, and for any other relief the Court deems just and necessary.

## COUNT II
### (42 U.S.C. §1983)
### (Violative Policies, Procedures, Practices and Customs)

77.     Plaintiff repleads, realleges, and incorporates by reference all the allegations contained in paragraphs 1 through 76.

78.     Upon information and belief, there exists within the Unified Government and KCKPD, as authorized by Defendant Ziegler, policies, procedures or customs, practices, or usages that are so pervasive, that they constitute the policy of the department, such that all KCKPD policies, procedures, practices and customs that are moving force behind, and thereby caused the

13

constitutional deprivations of decedent Craig J. McKinnis and caused damages as previously stated.

79.     Upon information and belief, the policies, practices, procedures, customs and usages that exist are:

a.    That officers of the KCKPD use excessive force, including deadly force, without regard for the need for the use of force, or without regard for the legality of its use.

b.    That officers of the KCKPD conspire with one another to cover for and protect one another from criminal an/or civil sanctions that might arise from the violation of constitutional rights of a citizen;

c.    That officers of the KCKPD can use excessive fore when it is not necessary and warranted where the Unified Government, KCKPD, and defendant Ziegler fail to take action or adequately punish officers that violate the constitutional rights of citizens as more fully described above;

d.    That officers of the KCKPD engage in conduct that is violative of the constitutional rights of its citizens of the United States, with whom they come in contact, including but not limited to: unjustifiably asphyxiating people in violation of the Constitution of the United States;

e.    That KCKPD willfully and deliberately fail to supervise and train its officers when excessive and lethal force can and should be used,

and allows its officers to use deadly force when it is not warranted or called for in violation of citizen's constitutional rights.

80.     Defendant Ziegler and KCKPD are and were vested wit the authority to train, supervise, discipline, and otherwise control the officers of the KCKPD.  Defendant KCKPD failed to change its policies, procedures, practices, customs and usages of the KCKPD by failing to train, supervise, discipline, and control the officers of the KCKPD including failing to act in the  face of transgressions, deficiencies, and unconstitutional conduct of its officer of which they knew or should have known.

81.     As the lawfully designated policy making body for the KCKPD, defendant Ziegler the Unified Government and the KCKPD have the power and responsibility to prevent the existence of policies, procedures, practices and customs which violate the constitutional rights of citizens of the United States, and have failed to and refused to do so, and, therefore, has been and continues to deliberately indifferent to the rights of the citizens of the United States, with whom the police officers of the KCKPD come into contact.  The failure of the KCKPD to act in the face of constitutionally violative conduct caused the constitutional deprivations that have been suffered by decedent Craig J. McKinnis.

82.     Defendants Unified Government, KCKPD and defendant Ziegler as the policy maker for the KCKPD enacted and allowed policies, procedures, practices, customs and usages set above which caused  or contributed to cause

the unconstitutional violations and death of Craig J, McKinnis, and the damages sustained by Craig J. McKinnis.

83.   In their failures, policies, procedures, practices, customs and usages, as previously described, the Unified Government, KCKPD and defendant Ziegler intentionally disregarded known facts or alternatively, was deliberately indifferent to a risk of constitutional violation which they knew or should have known, and their culpability caused the constitutional violations to decedent Craig J. McKinnis in causing his death and damages to Plaintiff.

84.   The policies, procedures, practices, customs and usages and conduct of defendants has caused Plaintiff damages including but not limited to:

a)  Pain, suffering, fear, anxiety, emotional distress prior to the death of Mr. McKinnis;

b)  Physical pain and suffering from the chocking prior to the death of Mr. McKinnis;

c)  The loss of income, filial care, attention, services, guidance, advice care and companionship, and

d)  The loss of life.

85.   Plaintiff is entitled to recover from defendants reasonable attorney fees and expenses provided by 42 U.S.C. §1988.

WHEREFORE, plaintiff requests that the Court, after a trial by jury of the claims, enter judgment against defendants, for her actual damages or nominal damages, for punitive or exemplary damages, for attorneys fees and expenses

pursuant to 42 U.S.C. § 1988, her costs, and for any other relief the Court deems just and necessary.

## COUNT III
### (Wrongful Death K.S.A 60-1901)

COMES NOW Plaintiff and for Count III of her Complaint against Defendants, jointly and severally, states:

86.     Plaintiff repleads, realleges, and incorporates by reference all the allegations contained in paragraphs 1 and 85, exclusive of prayer.

87.     Plaintiff brings Count II of this cause of action against Defendants, and she does so individually as the surviving spouse of decedent, pursuant to K.S.A. 60-1901.

88.     Defendant officers used excessive force in apprehending Craig McKinnis.

89.     The degree of force used by the defendant officers was excessive because it was not reasonably necessary to arrest Craig McKinnis or take him into custody.

90.     No reasonable officer in the position of the defendant officers would have used deadly force in arresting Craig J. McKinnis.

91.     Had the defendant officers taken proper restraining actions, the death of Craig McKinnis would not have occurred.

92.     Defendants owed Plaintiff and her Husband a duty of care. The Defendants breached that duty do to the Arresting Officers negligent conduct and/or negligent failure to act as set forth above.

93.     The acts of the defendant officers were wanton, malicious, evil, oppressive, or involved reckless indifference to the federally protected rights of decent, Craig McKinnis, thus entitling plaintiff to an award of punitive damages against the defendant officers.

94.     The conduct of the defendants has caused plaintiff damages including but not limited to;

e) Pain, suffering, fear, anxiety, emotional distress prior to the death of Mr. McKinnis;

f) Physical pain and suffering from the chocking prior to the death of Mr. McKinnis;

g) The loss of income, filial care, attention, services, guidance, advice care and companionship, and

h) The loss of life.

WHEREFORE, Plaintiff prays that the Court enter judgment herein in favor of Plaintiff and against Defendants and each of them, as follows:

• Compensatory and non-economic damages in a reasonable amount to be determined by a jury;

• Punitive and aggravating circumstances damages in an amount sufficient to deter Defendants and others from like conduct; and

• Such other and further relief as the Court deems just and proper, together with costs and interest.

## COUNT IV
### (False Arrest)

95.     Plaintiff repleads, realleges, and incorporates by reference all the allegations contained in paragraphs 1 and 94, exclusive of prayer.

96.     At the direct orders of the Officers, Plaintiff sat on the curb while listening to Arresting Officers choke and improperly restrains her husband.

97.     Plaintiff could hear her husband tell the Arresting Officers that he could not breath.  Plaintiff heard the Arresting Officers respond that "if you can talk, you can breath".

98.     Hearing this discussion, Plaintiff would rise to see what was happening to her husband.  Each time the Arresting Officers ordered her to sit down.

99.     Shortly after strangling her husband to a point were he could no longer be heard, Plaintiff overheard one of Arresting Officers exclaim, "Get her outta here before the press get's here!".  With that, upon information and belief, one of the Arresting Officers demanded that Plaintiff move from the curb adjacent to her car to a police car located at the end of the block.

100.     Plaintiff asked if she was being placed under arrest, which the police officer stated "No, but you are not free to leave".

101.     Upon information and belief, one of the Arresting Officers then informed Plaintiff that she would be taken to the Police Station for questioning. Again, Plaintiff asked if she was being put under arrest, the officer again said "No".  Plaintiff again asked if she was then free to leave, the officer again stated

"No.

102.    Plaintiff was then taken to the Police Station where she was questioned about the circumstances of the death of her husband at the hands of the Defendants.

103.    Plaintiff again asked if she was under arrest, which either John Doe Det. Warczakoski badge #1617 and/or John Doe Det. Howard badge #1561 stated "No".   Again, Plaintiff asked if she was free to leave, John Doe Det. Warczakoski badge #1617 and/or John Doe Det. Howard badge #1561 said "No".

104.    After hours of being held against her will, John Doe Det. Warczakoski badge #1617 and/or John Doe Det. Howard badge #1561 informed Plaintiff that she was now free to leave.

105.    Defendants' restraint of the personal freedom of Plaintiff without legal excuse by any words, acts, threats, or personal violence that under the circumstances the one being restrained fears to disregard.

WHEREFORE, Plaintiff prays that the Court enter judgment in favor of Plaintiff and against Defendants and each of them, as follows:

- Compensatory and non-economic damages in a reasonable amount to be determined by a jury;

- Punitive and aggravating circumstances damages in an amount sufficient to deter Defendants and others from like conduct; and

- Such other and further relief as the Court deems just and proper, together with costs and interest.

## COUNT IV
**Outrageous Conduct Causing Severe Emotional Distress To Family Member**

106.   Plaintiff repleads, realleges, and incorporates by reference all the allegations contained in paragraphs 1 and 105, exclusive of prayer.

107.   Defendants extreme and outrageous conduct in killing her common law husband in her presence.

108.   Defendants conduct was directed at Craig McKinnis, the immediate family of Plaintiff, and Plaintiff was present to witness the cries of Craig McKinnis that he could not breath, while being choked to death by Defendants.

109.   Plaintiff has suffered and continues to suffer severe emotional distress as a result of the conduct of Defendants.

110.   Defendants, by their conduct, intentionally or recklessly caused severe emotional distress to the Plaintiff

WHEREFORE, Plaintiff prays that the Court enter judgment in favor of Plaintiff and against Defendants and each of them, as follows:

- Compensatory and non-economic damages in a reasonable amount to be determined by a jury;

- Punitive and aggravating circumstances damages in an amount sufficient to deter Defendants and others from like conduct; and

Such other and further relief as the Court deems just and proper, together with costs and interest.

## COUNT V
### Outrageous Conduct Causing Severe Emotional Distress
### (In the alternative to Count IV)

111.   Plaintiff repleads, realleges, and incorporates by reference all the allegations contained in paragraphs 1 and 110, exclusive of prayer.

112.   Defendants acted intentionally, or in reckless disregard of the Plaintiff.

113.   The Defendants conduct was extreme and outrageous conduct in killing Craig McKinnis in her presence, while Plaintiff was hearing his cries that he could not breath.

114.   The Defendants conduct caused the Plaintiff's emotional distress.

115.   Plaintiff has suffered and continues to suffer extreme and severe emotional distress as a result of the conduct of Defendants.

116.   Defendants, by their conduct, intentionally or recklessly caused severe emotional distress to the Plaintiff

WHEREFORE, Plaintiff prays that the Court enter judgment in favor of Plaintiff and against Defendants and each of them, as follows:

- Compensatory and non-economic damages in a reasonable amount to be determined by a jury;

- Punitive and aggravating circumstances damages in an amount sufficient to deter Defendants and others from like conduct; and

Such other and further relief as the Court deems just and proper, together with costs and interest.

**JURY TRIAL DEMAND**

117.    Plaintiff respectfully requests a trial by jury on all issues.




Respectfully submitted,


THE FRIDKIN LAW FIRM, LLC


*/s/ Joseph M. Fridkin*
Joseph M. Fridkin KS 18625
10620 Johnson Drive, Ste. 105
Shawnee, KS 66203
Tel:  913.248.9100
Fax:  913.248.9111
jfridkin@fridkinlaw.com